IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NETCRAFT CORPORATION,

                                      OPINION AND ORDER

          Plaintiff,

                                      3:07-cv:00254-bbc

    v.

EBAY, INC. and PAYPAL, INC.,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Netcraft Corporation owns several patents related to internet billing methods. It contends that defendants Ebay, Inc. and PayPal, Inc. are infringing its patents by providing a third party payment system to customers wishing to make secure purchases over the internet. Defendants deny the contentions and have moved for summary judgment.

      The question presented in defendants' motion for summary judgment is whether the phrase "providing a communications link through equipment of a third party" in U.S. Patent Nos. 6,351,739 and 6,976,008 imposes a limitation that a third party, such as a company like defendants, must provide internet access to the customer. All parties agree that defendants do not provide their customers with access to the internet, meaning that the

1

allegation of infringement rises and falls on a conclusion that plaintiff's patents do not include such a limitation. Because I agree with defendants that plaintiff's patents do include such a limitation because "providing a communications link" means "providing customers with internet access" in the context of plaintiff's asserted patents, I will grant defendants' motion for summary judgment. (Because the question of infringement hinges entirely on this one question of claim construction, it is unnecessary to discuss the parties' proposed findings of fact.)

OPINION

The basic purpose behind plaintiff's patents is undisputed: to allow customers to make purchases over the internet through a trusted third party intermediary so that the customer does not have to provide sensitive financial information to an unfamiliar vendor. As is usually the case, the dispute is in the details.

The first and only question I must answer relates to the construction of the phrase "providing a communications link through equipment of the third party," which appears in all of the asserted claims in both asserted patents. Claim 1 of the '739 patent is representative. The first step of that method claim is to establish a billing agreement between the customer and the trusted third party. The second step is "providing a communications link through equipment of the third party between the purchasing customer

2

and the selling vendor through which the purchasing customer obtains information from the selling vendor with respect to a purchase of a product or service by the purchasing customer from the selling vendor."

The question in dispute is whether "providing a communications link through equipment of the third party" means providing *internet access* to the customer. Defendants say it does; plaintiff says the phrase is not so limited (though plaintiff never identified a definitive construction of the phrase).

Plaintiff is correct that the claim itself does not define "communications link" the way defendants propose. And plaintiff is also correct that the lay understanding of "communications link" is much broader than "internet access." However, courts cannot look at the claims in isolation or at just the lay understanding of them, but must consider the patent as a whole. As the court explained in Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (citations and quotations omitted):

> The claims, of course, do not stand alone. Rather, they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification, of which they are a part. . . . [T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

The phrase "communications link" is never used in the specification, which is the same in both asserted patents, but the specification makes it unmistakably clear that the

3

invention requires that the third party provide internet access to the customer. Because the phrase "communications link" is the only part of the claim that could incorporate this requirement, I construe "providing a communications link" to mean "providing customers access to the internet."

The first two sentences of the abstract support this construction: "An Internet billing method comprises establishing an agreement between an Internet access provider and a customer . . . . The provider creates access to the Internet for the customer." '739 pat., abstract. Thus, the abstract is unambiguous: the third party intermediary is "an Internet access provider" and that provider does in fact connect the customer to the internet. The Court of Appeals for the Federal Circuit has recognized on multiple occasions the importance of the abstract in construing the scope of a claim term. Pandrol USA, LP v. Airboss Ry. Products, Inc., 320 F.3d 1354, 1363 (Fed. Cir. 2003); SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed. Cir. 2001). Plaintiff advances no argument for disregarding it in this case.

The same understanding of the invention is repeated throughout the Summary of the Invention as well. In describing the invention, the patent states that "a *provider* establishes an agreement with a customer," '739 pat., col. 2, lns. 19-20 and even more explicitly that "the provider creates access to the Internet for the customer through the provider's equipment," '739 pat., col. 2, lns. 27-29. In countless instances, the specification refers to

4

the third party as the "provider," which plaintiff conceded at the claim construction hearing means "internet access provider."

Plaintiff attempts to dismiss these references in the specification as discussions of embodiments, but its efforts are unconvincing. To be sure, the embodiments in the patents require the third party to provide the customer with access to the internet.  For example, the second step of Figure 2 is "Connect Customer to Internet."  But the references in the Summary of the Invention to the "provider" are made in the context of discussions of "the present invention," which, in accordance with Federal Circuit precedent and common sense, means what it sounds like:  the limitation of a provider connecting the customer to the internet applies to the invention as a whole and not just to a particular embodiment. Verizon Services Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention."); C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole are more likely to be found in certain sections of the specification, such as the Summary of the Invention.")

Plaintiff argues that other parts of the patent support a more expansive construction, but none of these arguments is persuasive.  First, plaintiff points to dependent claim 6 of the '739 patent, which provides: "The method according to claim 1, 2, 3, 4, or 5, wherein the

5

third party is an Internet access provider, a cable television company, a telephone company, or a company offering financial services." Plaintiff argues that claim 6 would be "meaningless" under defendants' proposed construction because there would be no need to identify an "Internet access provider" as an example of a third party if claim 1 required the third party to connect the customer to the internet.

Plaintiff's argument has some surface appeal, but I agree with defendants that a reasonable reading of claim 6 is that it simply lists examples of entities that may provide customers with access to the internet. Thus, in claim 6, "Internet access provider" means a company like America On-Line, "whose only business is to offer connection to the Internet," '739 pat., col. 1, lns. 26-27; the other examples, such as "a cable television company," are entities that may offer internet access as an additional service.

This reading is supported by the specification, which contemplates in multiple locations the possibility that a cable television company or telephone company will provide the customer with internet access. E.g., '739 pat., col. 1, lns. 29-30 ("[T]elephone companies and cable television companies have announced plans to provide Internet access."); id. at col. 2, lns. 64-65 (access to internet may be provided by "cable television companies" or "telephone companies"). In any event, plaintiff's reliance on a presumption of claim differentiation cannot overcome the plain language of the patents. Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007).

6

Plaintiff seizes on the patents' references to "companies offering financial services" as an example of a potential third party intermediary, but never explains why "companies offering financial services" could not also be internet access providers. Although the patent does not include financial service companies in its lists of *examples* of internet access providers, e.g., '739 pat., col. 2, lns. 61-65, that does not mean that such companies *cannot* be providers. An invention is not limited to its examples.

Further, the Summary of the Invention appears to contemplate that financial service companies *will* provide internet access: "The main object of the present invention is to create a new business opportunity for telephone companies, cable television companies, *existing* internet access providers, and companies offering financial services . . . ." '739 pat., col. 1, lns. 61-64 (emphasis added). By distinguishing "existing" internet access providers from other types of companies, the specification suggests that the "new business opportunity" for those other companies involves providing internet access.

Finally, plaintiff points to passages in the patent discussing vendors that obtain internet access from a source other than the third party intermediary. In other words, the patent permits vendors to connect to the internet however they wish. This gets plaintiff nowhere because the dispute is not related to where *vendors* get internet access, but where *customers* obtain it. The specification makes it clear that customers must get their internet access from the third party intermediary. Plaintiff can cite no passage to the contrary despite

7

its best efforts.

Both sides advance arguments supporting their view of how the prosecution history informs the meaning of "communications link," but it is unnecessary to consider those arguments when the patent itself is clear. Phillips, 415 F.3d at 1317 ("[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.")

Accordingly I conclude that "providing a communications link" means "providing customers access to the internet." Because it is undisputed that defendants do not provide their customers with internet access, I conclude as a matter of law that defendants do not literally infringe plaintiff's asserted claims. Further, because plaintiff failed to respond to defendants' argument that defendants do not infringe under the doctrine of equivalents, I conclude that plaintiff has forfeited that issue.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Ebay, Inc. and PayPal, Inc. is GRANTED. It is DECLARED that defendants do not infringe U.S. Patent Nos. 6,351,739 and 6,976,008, owned by plaintiff Netcraft Corp. The clerk of court

8

is directed to enter judgment in favor of defendants and close this case.

Entered this 10th day of December, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge